UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| | * | |
| | * | |
| | * | |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | Criminal Action No. 19-cr-10144-ADB-1 |
| | * | |
| RASHAUN SCOTT. | * | |
| | * | |
| | * | |
| | * | |

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

BURROUGHS, D.J.

Presently before the Court is Rashaun Scott's ("Scott") motion for compassionate release in light of the ongoing coronavirus pandemic. [ECF No. 29]. For the reasons explained herein, the motion, [ECF No. 29], is GRANTED.[1]

## I.  FACTUAL BACKGROUND

On June 6, 2019, Scott pled guilty to possession with intent distribute cocaine base and cocaine. [ECF No. 17]. He was subsequently sentenced to eighteen months' incarceration to run concurrent to a state-court sentence, followed by three years of supervised release. [ECF Nos. 21, 22]. Scott served his state sentence at Wyatt Detention Facility in Rhode Island. [ECF No. 29 at 2; ECF No. 30 at 2]. He was released from state custody on March 2, 2020, [ECF No. 29-1], and eventually transferred to MDC Brooklyn in New York, [ECF No. 29 at 2; ECF No. 30 at 2], to finish his federal sentence. As of the time of his filing of this motion, MDC Brooklyn had

---

[1] Because the motion for compassionate release is granted, the motion for a hearing, [ECF No. 34], is DENIED as moot.

confirmed that twenty-four inmates and twenty members of the staff had tested positive for COVID-19. [ECF No. 29 at 1]. According to the Government, at the time of its opposition, no inmates at MDC Brooklyn had COVID-19, but seven staff members were positive and thirty-two other staff members had previously tested positive and recovered. [ECF No. 30 at 9].

Scott is thirty-nine years old and suffers from asthma, hypertension, and Type 2 diabetes. [ECF No. 29 at 18; ECF No. 31 at 1]. He is currently being treated for diabetes and is on a specialized diet to help lower his blood pressure. [ECF No. 29 at 3].

The Court assumes familiarity with the ongoing COVID-19 pandemic and the risk to inmates within the federal prison system. Further, according to the Centers for Disease Control, "[p]eople of any age with **certain underlying medical conditions**," including Type 2 diabetes, "**are at increased risk** of severe illness from COVID-19." People with Certain Medical Conditions, CENTERS FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2F www.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed August 10, 2020) (emphasis in original). Additionally, "based on what [the CDC] know[s] at this time," people with asthma and hypertension or high blood pressure "**might be at an increased risk** for severe illness from COVID-19." Id. (emphasis in original)

Scott is expected to be released on November 4, 2020 and has a release plan that has been approved by the state court.[2] [ECF No. 29 at 3; ECF No. 30-1 at 1]. He asks that he be released from prison early on his federal sentence and to home confinement at his mother's home in Brockton, Massachusetts, [ECF No. 29 at 2], where he has previously resided while on

---

[2] The Court notes that it intentionally delayed ruling on Scott's Motion so as to shorten the sentence imposed by only 3 months.

supervised release, [id. at 16].  Because of the state-court proceedings, Scott would be released

on conditions from this Court as well as the conditions imposed by the state court, including

electronic monitoring, drug and alcohol screens, and substance use evaluation.  [Id.].

## II.   PROCEDURAL BACKGROUND

On March 24, 2020, Scott filed his initial motion seeking release from custody.  [ECF

No. 24].  The Government opposed.  [ECF No. 27].  Subsequent to filing that motion, Scott was

transferred to a federal detention facility which gave him the ability to pursue institutional

channels for release or designation to community confinement.  The Court therefore denied the

motion for release.  [ECF No. 28].

On May 18, 2020, Scott filed the instant motion for compassionate release.  [ECF No.

29].  He had by then exhausted his administrative remedies under 18 U.S.C. § 3582(c)(1)(A)(i).

[ECF No. 29-2 at 2].  The Government opposed again, [ECF No. 30], and Scott filed a reply,

[ECF No. 31].

## III.   DISCUSSION

Scott seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A).  Previously,

incarcerated defendants could only seek compassionate release upon motion of the Bureau of

Prisons.  The First Step Act of 2018, however, amended that provision to allow prisoners to seek

relief directly from the courts once they have exhausted their administrative remedies.

Section 3582(c)(1)(A) provides that

[t]he Court may not modify a term of imprisonment once it has been imposed
except that . . . in any case . . . the [C]ourt, upon motion of the Director of the
Bureau of Prisons, or upon motion of the defendant after the defendant has fully
exhausted all administrative rights to appeal a failure of the Bureau of Prisons to
bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of
such a request by the warden of the defendant's facility, whichever is earlier, may
reduce the term of imprisonment . . . after considering the factors set forth in [18
U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that . . .

> (i) *extraordinary and compelling reasons* warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

Section 1B1.13 of the Sentencing Guidelines further explains that the Court may reduce a defendant's sentence if, after considering the factors in 18 U.S.C. § 3553(a), the Court determines that

> (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .
> (2) The defendant is not a danger to safety of any other person in the community, . . . ; and
> (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Scott has the burden of proving that he is entitled to relief under 18 U.S.C. § 3582. United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."). To meet this burden, he must satisfy three requirements. First, he must show that "extraordinary and compelling reasons" warrant the release; second, he must show that release is consistent with the Sentencing Commission's policy, which requires showing that he is not a danger to the safety of any other person or the community; finally, he must show that the sentencing factors in 18 U.S.C. § 3553(a) justify release. United States v. Jackson, No. 19-cr-00347, 2020 WL 3402391, at *4 (D.D.C. June 19, 2020).

As previously stated, Scott has exhausted his administrative remedies. [ECF No. 29-2 at 2; ECF No. 30 at 7]. The Court must therefore determine whether "extraordinary and compelling reasons" support compassionate release, consistent with the § 3553(a) sentencing factors and the Sentencing Commission's policy. [ECF No. 29].

A.     **"Extraordinary and Compelling Reasons" Under 18 U.S.C. § 3582(c)(1)(A)**

The Sentencing Guidelines recognize that compassionate release due to extraordinary and compelling reasons may be appropriate in cases where, for example, a defendant has a debilitating medical condition, or where other family circumstances make release appropriate. U.S.S.G. § 1B.13 cmt.1(A)–(C).  Courts have found that the list of reasons explicated in the Sentencing Guidelines is nonexhaustive and that release may also be warranted under the policy's "catch-all provision which allows for compassionate release when 'there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with' the other enumerated reasons." United States v. Guzman-Soto, No. 18-cr-10086, 2020 WL 2104787, at *3 (D. Mass. May 1, 2020); see also United States v. McCarthy, No. 17-cr-00230, 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020) ("Defendant has demonstrated extraordinary and compelling reasons justifying his release under section 3582(c)(1)(A) and section 1B1.13 of the Sentencing Guidelines [because his conditions] substantially increase his risk of severe illness if contracts COVID-19."); United States v. Zukerman, No. 16-cr-00194, 2020 WL 1659880, at *4 (S.D.N.Y. Apr. 3, 2020) (finding that extraordinary and compelling reasons justified modifying a sentence under § 3582(c)(1)(A)(i) because of risk of COVID-19).

The combination of Scott's asthma, hypertension, and Type 2 diabetes potentially place Scott at a high risk of developing a severe case of COVID-19.  See United States v. Lewis, No. 16-cr-00302, 2020 WL 2081374, at *1 (S.D.N.Y. Apr. 30, 2020) (finding that compassionate release was appropriate when "[i]t [was] beyond dispute that [the defendant was] at high risk from COVID-19, as . . . [his] diabetes is one of the most significant comorbidity factors and that [wa]s no doubt heightened by [his] high blood pressure").  "An early World Health Organization report on COVID-19 found that '[i]ndividuals at highest risk for severe disease and death include

5

people . . . with underlying conditions such as hypertension [and] diabetes.'"  United States v. Rodriguez, No. 2:03-cr-00271, 2020 WL 1627331, at *7 (E.D. Pa. April 1, 2020) (alterations in original) (quoting Report of the WHO-China Joint Mission on Coronavirus Disease 2019 (COVID-19), WORLD HEALTH ORGANIZATION (Feb. 24, 2020) at 12, https://www.who.int/docs/default-source/coronaviruse/who-china-joint-mission-on-covid-19-final-report.pdf)).  Courts have therefore found that the co-occurrence of certain illnesses, including hypertension and Type 2 diabetes, may justify a compassionate release due to the ongoing pandemic.  See, e.g., United States v. Amarrah, No. 17-cv-20464, 2020 WL 2220008, at *8 (E.D. Mich. May 7, 2020) (granting compassionate release to forty-five year old with hypertensive heart disease, asthma, and Type 2 diabetes); United States v. Lacy, No. 15-cr-30038, 2020 WL 2093363, at *7 (C.D. Ill. May 1, 2020) (granting compassionate release to a thirty-one-year-old defendant with hypertension and diabetes); United States v. Zuckerman, No. 16-cr-00194, 2020 WL 1659880, at *5 (S.D.N.Y. Apr. 3, 2020) (granting compassionate release to a seventy-year-old man with hypertension and diabetes); Rodriguez, 2020 WL 1627331, at *7 (finding that high blood pressure, in conjunction with other illnesses including Type 2 diabetes, and COVID-19 pandemic, was a "compelling reason[]" to support compassion release).

The Government argues that, given steps that the Bureau of Prisons has taken to address the COVID-19 pandemic, Scott has failed to demonstrate that he would be less likely to contract the virus at his mother's home in Brockton than while incarcerated.  [ECF No. 30 at 9–12]; see also United States v. Nygren, No. 16-cr-00106, 2020 WL 4208926, at *14 (D. Me. Jul. 22, 2020) ("Given the defined risk presented by continued incarceration at [the prison], the [c]ourt should assess whether the place where [the defendant] would live upon release would have a COVID-19 risk qualitatively and quantitatively different from [the prison], what the extent of the difference

is, and how the [c]ourt should factor this difference into its overall assessment.").  Scott would be released to his mother's home in Brockton, with his wife living across the street.  [ECF No. 29 at 16, 22].  He will be required to quarantine, self-isolate, and socially distance.  [Id. at 16]. Therefore, although the importance of this is debatable, Scott has demonstrated that the conditions upon his release to home confinement would place him at less risk than his present incarceration.

Beyond his medical condition, were it not for COVID, Scott would almost certainly be eligible for reassignment to a community setting such as a Residential Re-Entry Facility.  His time in prison has been challenging, given COVID and the length of time it took for him to be designated to a federal facility following the completion of his state sentence.  Even now that he is at a federal facility, there is seemingly little opportunity for him to participate in programming that would otherwise be available to him during the few months he has remaining on his sentence.  In this case, the Court grants the motion because of his health issues, but also because of these other individual circumstances that set Scott's petition apart.  The Government's argument that if Scott is eligible for compassionate release, then "every non-violent prisoner with any medical condition covered by the current crisis could seek to have his or her sentence immediately suspended and ordered released" is therefore misplaced.  [ECF No. 30 at 8].

### B.    Dangerousness

In addition to the factors supporting Scott's release, as set forth above, the Court must also consider whether Scott is "a danger to the safety of any person or to the community." U.S.S.G. § 1B1.13(2).  Scott argues that any concerns about the public's safety are sufficiently addressed by the conditions of parole imposed by his state-court sentence.  [ECF No. 29 at 22]. The Government responds that Scott has been incarcerated before, for being a felon in

possession of a firearm, and yet still violated the conditions of his release in 2017 and 2018 which arguably makes him a danger if released now.  [ECF No. 30 at 12].

A previous crime of violence, however, is insufficient to establish that a defendant would be a danger to the community, even if the conviction at issue was violent.  See United States v. Rachal, No. 16-cr-10043, 2020 WL 3545473, at *3 (D. Mass. June 30, 2020) (granting a motion for compassionate release to a defendant with hypertension who had been convicted of, among other things, armed bank robbery, because of defendant's illness and age); United States v. Calabrese, No. 16-cr-30033, 2020 WL 3316139, at *2 (D. Mass. June 18, 2020) (granting a motion for compassionate release to a defendant who had been convicted of a crime of violence, including conspiracy to interfere with commerce by threats of violence, despite the fact that the defendant "ha[d] not pointed to any specific medication conditions that place[d] him at a higher risk" with COVID-19, because he only had five months remaining on his sentence and had not had any disciplinary issues while incarcerated).  Further, in this case, Scott's sentence does not arise from a crime of violence.  The Court is confident that any risks to the public safety may be sufficiently addressed with its own conditions of supervised release and those already imposed by the state court, which include electronic monitoring and alcohol and substance use screenings. [ECF No. 29 at 16].

### C.    The § 3553(a) Factors

Finally, the Court must "consider[] the factors set forth in section 3553(a)," 18 U.S.C. § 3582(c)(1)(A), including:

> (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2)    the need for the sentence imposed—
>    (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B)  to afford adequate deterrence to criminal conduct;
>    (C)  to protect the public from further crimes of the defendant; and

8

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> . . .
>
> (3)     the kinds of sentence and the sentencing range established [under the applicable Guidelines sections]
>
> . . . [and]
>
> (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a).  The Court weighs those factors against the reasons favoring compassionate release.  United States v. Ebbers, 432 F. Supp. 3d 421, 430–31 (S.D.N.Y. 2020) ("[I]n considering the section 3553(a) factors, [the court] should assess whether those factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release, particularly whether compassionate release would undermine the goals of the original sentence.").

Scott argues that a compassionate release at this point, with only a few months left on his sentence, would further the goal of imposing a sentence that is "sufficient but not greater than necessary."  Courts have observed that, in light of the ongoing COVID-19 pandemic, a sentence "that *was* sufficient but no greater than necessary" may now become "one immeasurably greater than necessary."  United States v. Park, No. 16-cr-00473, 2020 WL 1970603, at *5 (S.D.N.Y. Apr. 24, 2020).  Scott has served a substantial portion of his eighteen-month sentence and likely would have already been transferred to a halfway house or other residential facility were it not for COVID-19.  The Court cannot conclude that the  deterrent or punitive value of the remaining three months of his federal sentence outweigh the reasons supporting compassionate release for Scott, especially when he will be released to stringent standards imposed by both the state court and this Court.

## IV.   CONCLUSION

The Court finds that, given the co-occurrence of hypertension and Type 2 diabetes, and considering the circumstances of Scott's confinement, including that he has only three months of

his sentence remaining, has not been able to participate in programming, and would likely have already been transferred to a half-way house or similar facility, compassionate release is warranted in this case.  Accordingly, Scott's motion for compassionate release, [ECF No. 29], is GRANTED.

The Court hereby adds the following conditions to the supervised release conditions previously imposed by the Court: (1) upon release from prison, Scott will spend two weeks strictly quarantining at his mother's residence.  He will go directly from the prison to his mother's house and will not leave there for two weeks without the permission of Federal Probation; (2) the first three months of his supervised release will be spent on home confinement with the understanding that Scott will be allowed out of his mother's residence only for purposes approved by probation to include medical treatment, religion, employment, or approved programming; and (3) his home confinement will be monitored by random phone or video calls from Federal Probation to ensure that he has remained in his mother's house other than for approved purposes.  The Defendant is cautioned that any failure to strictly adhere to these conditions will result in his immediate re-incarceration.  The motion for a hearing, [ECF No. 34], is DENIED as moot.

**SO ORDERED.**

August 11, 2020                                      /s/ Allison D. Burroughs
                                                     ALLISON D. BURROUGHS
                                                     U.S. DISTRICT JUDGE